**Guy SABATIER, Petitioner, Appellant,**

v.

**Sheriff Edward K. DABROWSKI, etc., et al., Defendants, Appellees.**

No. 78–1343.

United States Court of Appeals,
First Circuit.

Argued Oct. 6, 1978.
Decided Nov. 15, 1978.

Robert B. Mann, Providence, R. I., with whom Mann & Roney, Providence, R. I., was on brief, for petitioner, appellant.

Murray R. Stein, Atty., Government Regulations and Labor Section, Dept. of Justice, Washington, D. C., with whom Philip Wilens, Chief, Government Regulations and Labor Section, Criminal Division, Washington, D. C., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from a denial in part of a habeas corpus petition brought by Guy Sabatier in an effort to prevent his extradition to Canada. Sabatier, a French citizen, is sought by the Canadian government in connection with two offenses that occurred in 1975. Canada requested his extradition in a diplomatic note dated May 31, 1977;[1] the United States Attorney's Office in Rhode Island commenced extradition proceedings on her behalf[2] and a United States magistrate issued a certificate of extraditability on April 6, 1978. *See* 18 U.S.C. §§ 3184, 3186, 3190, 3191. Sabatier then petitioned the United States District Court for the District of Rhode Island for a Writ of Habeas Corpus. The district court granted the petition as to one of the offenses because it was not specified as extraditable in any relevant treaty. Sabatier appeals from the denial of the petition as to the other offense, armed robbery.

Sabatier argues that there is no extradition treaty between the United States and Canada that applies to an armed robbery committed in 1975; that the magistrate improperly denied him discovery; that the request for extradition was barred by

1. An earlier complaint seeking Sabatier's extradition was filed in a Rhode Island court in February 1977 but eventually was discontinued. The Canadian government has denied that this earlier action was taken at its request.

2. The United States Attorney was authorized to represent the Canadian government by a certi-

fied letter dated June 21, 1977. The extradition proceedings did not begin until March 1978, apparently because Sabatier was serving a sentence in a Rhode Island prison. The extradition hearing was held on April 3, 1978, after Sabatier was released on parole.

the rules of res judicata and collateral estoppel; that he was denied the right to a speedy hearing; and that the proceedings before the magistrate were fatally flawed because a complete transcript of them could not be made.[3] In reviewing these claims, we observe that the scope of our inquiry is relatively limited. Direct judicial review of a certification of extraditability to the Secretary is not available. *Collins v. Miller,* 252 U.S. 364, 369, 40 S.Ct. 347, 64 L.Ed. 616 (1920); *Greci v. Birknes,* 527 F.2d 956, 958 (1st Cir. 1976). Habeas corpus is available "only to inquire whether the magistrate had jurisdiction, whether the offence charged is within the treaty and, by a somewhat liberal extension, whether there was . . . reasonable ground to believe the accused guilty." *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925); *see Greci,* 527 F.2d at 958.

[redacted] Sabatier's major contention is that the offense of armed robbery committed in 1975 is not extraditable under any valid treaty between Canada and the United States. The government seeks to extradite Sabatier under Article X of the Webster-Ashburton Treaty, 8 Stat. 572, T.S. No. 119, signed by Great Britain and the United States in 1842 and incorporated into subsequent conventions with Britain and Canada. It relies on the fact that the weight of authority is "that new nations inherit the treaty obligations of the former colonies." *Jhirad v. Ferrandina,* 355 F.Supp. 1155, 1159–61 (S.D.N.Y.), *rev'd on other grounds,* 486 F.2d 442 (2nd Cir. 1973), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). Sabatier argues that Canada is an exception to this rule and that the Webster-Ashburton Treaty therefore is not applicable. In effect, he would have us hold that no extradition treaty between Canada and the United States covering the offense of armed robbery was effective until 1976, when the current treaty with Canada was ratified by the Senate. This disputes the conduct of the governments of both countries, to which we must give great deference. *Terlinden v. Ames,* 184 U.S. 270, 288, 22 S.Ct. 484, 46 L.Ed. 534 (1902). The history of the relations between the two countries, the terms of the current extradition treaty,[4] the official position of the Department of State, and the relevant rules of law all point to the conclusion that Canada should be regarded as a party to the Webster-Ashburton Treaty and that that treaty permits her to seek Sabatier's extradition for an armed robbery committed in 1975. *Cf. Terlinden v. Ames,* 184 U.S. 270, 22 S.Ct. 484, 46 L.Ed. 534 (1902) (treaty with Germany); *Jhirad,* 486 F.2d at 443 n. 3 (treaty with India); *Ivancevic v. Artukovic,* 211 F.2d 565 (9th Cir.), *cert. denied,* 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645 (1954) (treaty with Yugoslavia). For this reason we see no error in the district court's denial of Sabatier's request for discovery of the negotiations leading to the current treaty. There is no reason to look to the negotiations when the terms of that treaty themselves acknowledge the existence of prior effective treaties between the United States and Canada.

[redacted] Sabatier's remaining contentions are also without merit. The suggestion that the question of extraditability was res judicata is frivolous. The record before this court shows only that a complaint seeking Sabatier's extradition was filed with the Fifth Division District Court of Rhode Island on February 4, 1977, and that the case was discontinued on May 23, 1977, "more than 90 days having elapsed." The district

3. The hearing was tape-recorded but. due to mechanical problems, the second part of the tape is inaudible and cannot be transcribed.

4. The current treaty, which became effective March 22, 1976, provides:

> "This treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements."

Treaty on Extradition, Dec. 3, 1971, United States and Canada, art. 18, para. 2, 27 U.S.T. 983, T.I.A.S. No. 8237. This explicitly acknowledges the existence of prior extradition agreements between the United States and Canada.

court held that the Rhode Island forum was not a court of general jurisdiction within the meaning of 18 U.S.C. § 3184, which specifies which courts may hear extradition petitions. Even were that ruling for some reason wrong,[5] both the United States and Canada deny having been parties in this earlier proceeding and, in any event, there was no adjudication on the merits. Under such circumstances a second extradition complaint could be filed. *Collins v. Loisel,* 262 U.S. 426, 429, 43 S.Ct. 618, 67 L.Ed. 1062 (1923).

■ Sabatier, styling the sixth amendment right to a "speedy and public trial" a right to a "speedy adjudication," argues that it applies to extradition proceedings. This turns, obviously, on characterizing such proceedings as "criminal prosecutions" within the meaning of the sixth amendment—a characterization that goes against the weight of authority and ignores the modest function of an extradition hearing. It is not conducted under the Federal Rules of Criminal Procedure, Fed.R.Crim.P. 54(b)(5), and generally is not considered a criminal proceeding, *see Charlton v. Kelly,* 229 U.S. 447, 461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); *Neeley v. Henkel,* 180 U.S. 109, 122–23, 21 S.Ct. 302, 45 L.Ed. 448 (1901); *Benson v. McMahon,* 127 U.S. 457, 463, 8 S.Ct. 1240, 32 L.Ed. 234 (1880); *Jhirad,* 536 F.2d at 482. This reflects the nature of a certification of extraditability: whether an alleged fugitive can be extradited for an offense committed outside the United States depends on our diplomatic agreements with the requesting country. The hearing is merely to ascertain whether a treaty applies and whether the evidence of criminal conduct is sufficient to justify his extradition and trial by that country. Since the executive branch is charged with the conduct of our foreign relations, the role of the judge or magistrate is only to ensure that this minimal showing has been made. *Fernandez,* 268 U.S. at 312, 45 S.Ct. 541, 69 L.Ed. 970; *Shapiro v. Secretary of State,*

162 U.S.App.D.C. 391, 499 F.2d 527, 531 (1974), *aff'd on other grounds,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). The question of guilt or innocence is left to determination in a different proceeding in another country. Nothing in the present circumstances leads us to view the sixth amendment right to a speedy trial as germane. *Accord, Jhirad,* 536 F.2d at 485 n. 9.

■ There is no merit to Sabatier's challenge to the extradition certification based on the gap in the transcript of the proceedings before the magistrate. Assuming without deciding that the Court Reporter Act, 28 U.S.C. § 753, applies to an extradition hearing, failure to comply with the Act is not prejudicial per se and does not necessarily require a new trial or hearing. *Commercial Credit Equipment Corp. v. L & A Contracting Co.,* 549 F.2d 979, 980 (5th Cir. 1977); *United States v. Snead,* 527 F.2d 590, 591 (4th Cir. 1975); *United States v. Long,* 419 F.2d 91, 94 (5th Cir. 1969); *Edwards v. United States,* 374 F.2d 24, 26–27 (10th Cir.), *cert. denied,* 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967). Sabatier argues that he is prejudiced because "the transcript is the vehicle by which the Secretary of State learns about both the factual and legal issues of a particular case" and that if he had had a transcript he "would have been able to submit [it] to the Department of State." These are empty assertions, however, in the absence of any showing or suggestion of what the complete transcript would have added to the material now available to the Secretary or this court. *See Bentheim v. United States,* 403 F.2d 1009, 1011 (1st Cir. 1968), *cert. denied,* 396 U.S. 945, 90 S.Ct. 384, 24 L.Ed.2d 247 (1969). Sabatier's appeal rests on legal arguments as distinguished from any possible question of fact. Moreover, no witnesses testified at the proceeding; so far as appears, the magistrate only accepted documents into evidence and heard arguments of counsel. The documents are available. We have no

---

5. Sabatier argues that the Rhode Island court was one of general jurisdiction, but his brief offers no authority to support this position.

reason to believe that a verbatim transcript would enhance Sabatier's position.

*Affirmed.*