In the Matter of the Extradition of Sergio LOCATELLI, a/k/a "Sergio Luigi Locatelli", a/k/a "Guido Zaccaria".

No. 78 Cr. Misc. No. 1 (KTD).

United States District Court,
S. D. New York.

March 6, 1979.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for the United States of America; Carolyn H. Henneman, Asst. U. S. Atty., New York City, of counsel.

Saxe, Bacon & Bolan, P. C., New York City, for defendant; Michael R. Rosen, New York City, of counsel.

OPINION

KEVIN THOMAS DUFFY, District Judge:

The Government of Switzerland has formally demanded the extradition of Sergio Locatelli in order that he may stand trial there for a series of business-related crimes allegedly committed by him between 1971 and 1976. The instant proceedings [1] were begun by the United States on behalf of the Swiss Government pursuant to 18 U.S.C. § 3184. [2]

■ On February 20, 1979 an extradition hearing was held before me, as required under § 3184, to determine whether the evidence presented by the Swiss Government to sustain the charged offenses under the applicable treaty of extradition was sufficient to mandate issuance of a certificate of extradition. Based upon the documents submitted and the arguments presented, including the unsworn testimony of Sergio Locatelli, I find that all the terms of the treaty have been met and there is more than sufficient evidence, to which no viable explanation was offered to warrant issuance of the certificate.

Sergio Locatelli is apparently a notorious figure in the world of documentary films. He claimed that he has, during his career, produced a number of documentaries dealing with the plight of the migrant worker. In this regard, he allegedly has critically focused much of his attention upon the poor treatment of Italian migrant workers in his native Switzerland.

The specific charges lodged by the Swiss Government against Locatelli may be separated into three categories:

(1) Fraud and forgery involving two business loans to which one Alfred de Schulthess was guarantor;

(2) Fraud perpetrated against two Swiss banks in the unauthorized transfer of funds; and

(3) Fraud involving the use of an American Express Company credit card without intending to pay the charges incurred.

*Alfred de Schulthess:*

Concerning his dealings with de Schulthess, Locatelli is charged with having fraudulently induced de Schulthess by the use of certain forged documents to guarantee two loans which Locatelli said were to be used to finance commissioned television films. The films, however, were apparently never commissioned and upon Locatelli's default on the loans, de Schulthess was left to make good for the monies.

---

1. This case originally came before me pursuant to an application by defendant, Sergio Locatelli, for a writ of habeas corpus attacking his continued provisional detention at the hands of the United States Government. Locatelli's provisional detention was the result of a request by the Swiss Government that extradition proceedings against him be commenced on their behalf by the United States and that he be detained pending his commitment for rendition to Switzerland pursuant to 18 U.S.C. §§ 3181 *et seq.* and the Treaty of Extradition, dated May 14, 1900, between Switzerland and the United States, 31 STAT. 1928. Suffice it to say that a superceding complaint filed by the Government acted to moot Locatelli's attack, *see e. g., In re Chan Kam-Shu*, 477 F.2d 333, 339 n. 14 (5th Cir. 1973), and accordingly, the petition was denied.

2. Section 3184 provides that:
   whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

The conduct alleged is in violation of Articles 148 and 251 of the Swiss Penal Code.[3]

*Bank Frauds:*

Here Locatelli is charged with attempted fraud, in violation of Articles 21, 22[4] and 148 of the Swiss Penal Code, against two Swiss banks. The fraud against the first bank consisted of Locatelli's impersonating a bank official and directing the transfer of substantial funds to the account of Mr. Della Valle. Apparently Locatelli owed Della Valle a substantial amount of money and rather than pay it from his own funds he, disguised as a bank official, authorized repayment with the bank's funds.

The second incident involved a similar attempt by Locatelli to defraud a bank. Here, however, Locatelli, again impersonating a bank official, authorized the withdrawal of substantial funds by one Emilio Bo. When Mr. Bo attempted to withdraw the funds, he was arrested by Swiss police and he later confessed that it was Locatelli who set the scheme up.

*American Express:*

Here, Locatelli is charged with fraud under Article 148 of the Swiss Penal Code in that he intentionally used his American Express card on repeated occasions in Italy without ever paying the monthly charges due. Since Locatelli is a Swiss citizen, he is, under Article 6 of the Swiss Penal Code, punishable in Switzerland for this offense.[5]

The applicable treaty is entitled Treaty of Extradition of May 14, 1900 between Switzerland and the United States. 31 STAT. 1928. The pertinent Articles provide:

## ARTICLE I

The Government of the United States of America and the Swiss Federal Council

3. Article 148 provides:
   (1) Any person who, with the intent of obtaining for himself or for a third person any illegal pecuniary gain, maliciously causes a person to commit an error through false statements or by concealing the true facts, or maliciously exploits the error of another person and by such action convinces the person to take actions detrimental to his financial interests or those of a third person, shall be punished with a maximum of five years' imprisonment.
   (2) The penalty shall be ten years of imprisonment at hard labor plus a fine if the accused engages in fraud on a regular basis.
   (3) Fraud committed against close relatives or associates shall not be prosecuted unless a formal complaint is made.
   Article 251 provides:
   (1) Any person who, with the intent of interfering with the financial interests or rights of another person, or of obtaining for himself or a third person an illegal advantage,
   —creates a false instrument, forges an instrument, misuses the signature or the mark made by the hand of another person in order to create a forged instrument, or falsely states or causes to be stated in an instrument a fact of legal effect;
   —or, in order to deceive another, makes use of such an instrument created or forged by a third person.
   —shall be punished by a maximum term of five years imprisonment at hard labor.
   (2) If the forgery, or the use of the forgery, deals with a public registry, an authentic instrument, a holograph will, a security, a bill of exchange, or other negotiable instrument, the penalty shall be a maximum of five years' or a minimum of six months' imprisonment.
   (3) In cases of minor consequences, the court may decide between imprisonment or a fine.

4. Articles 21 and 22 provide:
   (1) This penalty may be reduced for a person who starts to commit a crime or offense but does not pursue his criminal activity to the end. (Art. 65).
   (2) A person who of his own accord decides not to pursue his criminal activity to the end may be exempted from all punishment for his attempt.
   (1) The penalty may be reduced for a person who pursues his criminal activity to the end but does not obtain the result required for the crime or offense to have been committed. (Art. 65).
   (2) The judge may freely reduce the penalty (Art. 65) of a person who, on his own accord, has prevented or helped to prevent the result from occurring.

5. Article 6 provides:
   (1) The present code applies to any Swiss national who has committed, while on foreign territory, a crime or offense subject by Swiss law to extradition, if the crime or offense is also repressed in the country where it was committed and if the perpetrator is in Switzerland or is extradited thereto by reason of his violation of the law. Foreign law will, however, be applicable if it is more favorable to the accused.

bind themselves mutually to surrender such persons as, being charged with or convicted of any of the crimes or offenses enumerated hereinafter in Article II, committed in the territory of one of the contracting States, shall be found in the territory of the other State: Provided that this shall be done by the United States only upon such evidence of criminality as, according to the laws of the place where the fugitive or person shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed. In Switzerland, the surrender shall be made in accordance with the laws in force in that country at the time of the demand.

Neither of the two Governments, however, shall be required to surrender its own citizens.

### ARTICLE II

Extradition shall be granted for the following crimes and offenses, provided they are punishable both under the laws of the place of refuge and under those of the State making the requisition, to wit:

. . . . .

4. The counterfeiting or forgery of public or private instruments; the fraudulent use of counterfeited or forged instruments.

5. The forgery, counterfeiting or alteration of coin, paper-money, public bonds and coupons thereof, bank notes, obligations, or other certificates or instruments of credit, the emission or circulation of such instruments of credit, with fraudulent intent; the counterfeiting or forgery of public seals, stamps or marks, or the fraudulent use of such counterfeited or forged articles.

6. Embezzlement by public officials, or by other persons, to the prejudice of their employers; larceny; obtaining money or other property by false pretenses; receiving money, valuable securities or other property, knowing the same to have been embezzled, stolen or fraudulently

obtained. The amount of money or the value of the property obtained or received by means of such criminal acts, must exceed 1000 francs.

. . . . .

### ARTICLE III

Extradition shall likewise be granted for an attempt to commit, or participation in, any of the crimes and offenses enumerated in Article II, provided such attempt or participation is punishable in the United States as a felony, and in Switzerland with death, or confinement in a penitentiary or workhouse.

As indicated in the above quoted material, all three series of fraudulent conduct allegedly engaged in by Locatelli constitute crimes in Switzerland which are expressly extraditable under the treaty.[6] The treaty provides, however, that before extradition will be permitted, the offenses alleged must also constitute a crime where the fugitive is found. In this regard, the evidence submitted on behalf of the country seeking extradition must be sufficient to justify the accused person's arrest and committal for trial under the procedures applicable "in the location where the fugitive is found."

The phrase "the law of the place where the fugitive is found" has been interpreted to refer to the laws of the state where the fugitive was arrested rather than to the laws of the United States. *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973). In addition, upon reference to state law and identification of the applicable crime thereunder, the requesting nation must produce sufficient evidence to show that there is probable cause to believe that said crime was committed by the extraditee. *Matter of Sindona*, 450 F.Supp. 672 (S.D.N.Y.1978).

Consequently, in the case at bar the law of New York, as the location of Locatelli's arrest, is the necessary starting point.

The acts with which Locatelli is charged, if committed in New York, would violate the larceny and forgery provisions of the New York Penal Law. N.Y. Penal Law

6. See footnotes 3–5 for the specific crimes enunciated under the Swiss Penal Law.

§§ 155.05, 170.10, and 110.00 (McKinney 1975).[7] Moreover, in light of the amount of money involved in each of the charged frauds and the type of documents allegedly forged, all the offenses would constitute felonies in New York.[8] In addition, it should be noted that the charged offenses would also constitute federal offenses. The alleged conduct would be punishable as mail or wire fraud pursuant to 18 U.S.C. §§ 1341, 1343.[9]

7. Section 155.05 provides in pertinent part:

§ 155.05 Larceny; defined

(1) A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

(2) Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

(a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement or obtaining property by false pretenses;

. . . . .

(d) By false promise.

A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or, as the case may be, does not believe that the third person intends to engage in such conduct.

New York Penal Law § 170.10 provides, *inter alia*, as follows:

A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

(1) A deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status.

Section 110.00 provides that:

A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.

8. There is no doubt that the dollar amount involved in each of the alleged frauds is well in excess of the $1,500 threshold amount set in New York for Grand Larceny. Moreover, since

The sole question left for determination, therefore, is whether there is probable cause to believe Locatelli committed the offenses charged. *See, e. g., Shapiro v. Ferrardina*, 478 F.2d 894, 900–01 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973).[10] To this end, I may only receive evidence offered by the accused that "explains" the demanding country's proof. The accused has no right, however, to present evidence calculated only to

the documents forged were alleged contracts whereby Locatelli was purportedly commissioned to produce certain documentaries, the requisite elements are present for the crime to constitute a felony.

9. Section 1341 provides that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Section 1343 provides that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

10. Indeed, it is clear that a Judge, sitting as a committing magistrate, cannot determine the guilt or innocence of the extraditee. Rather, he is limited to determining only whether the evidence submitted is sufficient to commit the accused for trial. *Id.*

contradict the demanding country's proof or pose questions of credibility. *Collins v. Loisel*, 259 U.S. 309, 315–16, 42 S.Ct. 469, 66 L.Ed. 956 (1922); *Shapiro v. Ferrardina, supra,* 478 F.2d at 901.

The evidence offered by the Swiss Government, briefly summarized, consists of the following:

(1) Three warrants of arrest issued by the Swiss Government;

(2) The testimony of Alfred de Schulthess;

(3) Detailed documentation of Locatelli's dealings with American Express;

(4) The allegedly forged documents; and

(5) Various investigative reports concerning all three fraudulent transactions including the testimony of those individuals Locatelli impersonated in his attempts to defraud the two Swiss Banks.

The totality of evidence and documentation of the charged offenses is enormous. The inescapable conclusion is that the Swiss Government has more than met its burden in establishing probable cause that the alleged crimes were committed and the accused, Sergio Locatelli, committed those crimes. Indeed, at the extradition hearing, Locatelli never contested that the evidence, if true, established probable cause to believe that the crimes were committed and that he committed them. Rather, he attempted to "explain" the criminal charges.

The sole basis of Locatelli's objecting to extradition is that the underlying motive for Switzerland's seeking his extradition is political rather than criminal in nature.[11] More particularly, he argues that at the heart of the criminal charges lie his documentary films which have been highly critical of the Swiss Government's handling of the Italian migrant worker. He contends that the sole motive for these criminal charges is to seek revenge for these apparently bitterly truthful films and that in reality these documentaries represent, in the eyes of the Swiss Government, his only crime. He concludes that this "explanation" takes him outside the parameters of the treaty and extradition thereunder since it permits extradition only for acts of criminality.

■ It is true that under the treaty extradition is not permitted for offenses of a political character or where the request for extradition has been made with a view to trying or punishing the person for an offense of a political character. It is equally as clear, however, that whether particular charges fall within the political offense exception is a question to be determined by reference to the circumstances attending the alleged crime at the time of its commission and not by reference to the motives of those who subsequently handle the prosecution. *Sindona v. Grant,* 461 F.Supp. 199 at 207 (S.D.N.Y.1978); *Garcia-Guillern v. United States,* 450 F.2d 1189, 1192 (5th Cir. 1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

11. The political motives underlying the instant extradition are, according to Locatelli, evidenced by the fact that in Italy the Swiss Government was unable to obtain his extradition. Although successful in the judicial branch, the political arm of the Italian Government refused to extradite him and, in fact, granted him amnesty for those crimes.

In this regard, it should also be noted that prior to these extradition proceedings a final order and warrant of deportation was issued against Locatelli. His deportation order, designating Italy as the deportation destination, was entered on the basis of a number of violations of the Immigration and Nationality Act, 8 U.S.C. § 1251. Since this order directs his deportation to Italy, where he apparently has amnesty for the crimes charged in the instant proceeding, the Swiss Government is extremely interested in his extradition to Switzerland before his deportation. I offer this merely as a possible interpretation of the vigor with which the United States, on behalf of the Swiss Government, has pursued these proceedings.

In addition, Locatelli argues that he is not a Swiss citizen, but, rather, an Italian citizen. The bulk of documentary evidence submitted to the Court, however, indicates the contrary. Indeed, as a result of Mr. Locatelli's repeated brushes with the law in this country and the numerous official documents generated therewith, all indications are that the defendant was born in Switzerland in 1939, became a Swiss citizen in 1958 and is indeed the person named in charges filed by the Swiss Government.

Based upon the totality of evidence before me, I have no doubt that Locatelli is in fact a Swiss citizen.

It is apparent that quite apart from any political motives of the Swiss Government in vigorously seeking Locatelli's extradition, the crimes charged were not political in nature when allegedly committed. I am simply without jurisdiction to look behind the charges as propounded by the Swiss Government and must, in this respect, yield this inquiry to the Secretary of State. *Sindona, supra,* at 207; *Garcia, supra,* 450 F.2d at 1192.

Accordingly, the certificate of extradition will issue.

SO ORDERED.