**In the Matter of the Extradition to Canada of Glenn WILLIAMS, Defendant.**

**79 Cr. Misc. No. 1.**

United States District Court, S. D. New York.

Dec. 17, 1979.

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., New York City (Carolyn H. Henneman, Asst. U.S. Atty., New York City, of counsel), for Government of Canada.

Lavin & Batchelder by James P. Lavin, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

The Government of Canada has requested extradition of Glenn Williams so that Williams may be tried in Canada for conspiracy to import narcotics. This request for extradition is made pursuant to the Treaty on Extradition Between the United States of America and Canada, Dec. 3, 1971-June 28, 1974, United States-Canada, 27 U.S.T. 983, T.I.A.S. No. 8237 ("the Treaty").

■ Article 10 of the Treaty provides:

(1) Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, . . . to justify his committal for trial if the offense of which he is accused had been committed in its territory . . . .

The phrase, "according to the laws of the place where the person sought shall be found," refers to state law, in this case the laws of the State of New York. *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973).

■ The function of this court in an extradition case "is not to decide guilt or innocence but merely to determine whether there is 'competent legal evidence which . . . would justify [the accused's] apprehension and commitment for trial.'" *Id.* at 900–01 (quoting *Collins v. Loisel*, 259 U.S. 309, 315, 42 S.Ct. 469, 471, 66 L.Ed. 956 (1922)). Thus, the court's function is to determine whether there is any evidence to establish reasonable or probable cause to believe that the accused committed the offenses charged. *Shapiro v. Ferrandina, supra*, 478 F.2d at 905; *see In re Locatelli*, 468 F.Supp. 568, 573 (S.D.N.Y. 1979) (probable cause); *Sindona v. Grant*, 461 F.Supp. 199, 205 (S.D.N.Y. 1978) (probable cause); *In re Sindona*, 450 F.Supp. 672, 687 (S.D.N.Y. 1978). *See also United States ex rel. Rauch v. Stockinger*, 269 F.2d 681, 684 (2d Cir.), *cert. denied*, 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183 (1959) (reasonable ground); *In re Shapiro*, 352 F.Supp. 641, 644 (S.D.N.Y. 1973) (reasonable ground). Moreover, in making its determination the court may only receive evidence offered by the accused which explains, rather than contradicts, the demanding country's proof. *Shapiro v. Ferrandina, supra*, 478 F.2d at 905.

■ In the case at hand, Glenn Williams is accused of conspiring to import narcotics into Canada. In support of its request for extradition, the Government of Canada has submitted the affidavits of three members of the Royal Canadian Mounted Police (RCMP).

1) The affidavit of RCMP Constable Edward J. MacEachern summarizes what is alleged to be a series of lawfully intercepted telephone conversations. The first conversation was between Billy James, who was using the telephone of Robert Yeomans, and an unknown male named Mike. In this conversation, Billy James told "Mike" he got a call from his friend and there was Red Lebanese hashish on the way, and it would be $2,500 a pound. Constable MacEachern states, wholly without support, that he believes that the "friend" Billy James was referring to was Robert Yeomans.

Constable MacEachern stated that in a second conversation he overheard Billy James tell an unknown male named "David" that he just got a phone call and there was some Red Lebanese hashish on its way, and $2,500 was the price "he" quoted. Again, Constable MacEachern, without offering any support, states in his affidavit that he believes that the "he" referred to in the conversation was Yeomans.

The third conversation monitored by Constable MacEachern took place between Yeomans in Canada and Scott Williams (Glenn Williams's brother) in Boston, Massachusetts. Scott Williams asked Yeomans if he was coming down and Scott Williams said that "it" wouldn't wait. Yeomans asked why they couldn't wait, that he and Scott Williams had the money. Scott Williams suggested that Yeomans should fly right to New York City to LaGuardia Airport. Scott Williams said he would probably have to go to New York City that night. Scott Williams and Yeomans then agreed to wait until later that night for a final decision as to whether Yeomans would go directly to New York City or not.

The fourth intercepted conversation was between Billy James, again using Yeomans' telephone in Canada, to Scott Williams's telephone in Boston. Yeomans answered Scott Williams's telephone and was told by James that an Emery LeBlanc had been arrested in New Brunswick and James wanted to warn Yeomans. Constable MacEachern stated that on August 27, 1979, Emery LeBlanc was arrested with approximately six pounds of hashish in his possession.

It is important to note that Glenn Williams was not a party to any of these intercepted conversations, nor was he mentioned in any of the conversations.

2) The affidavit of RCMP Corporal Mark J. Fleming attests to his surveillance of Yeomans from Logan Airport in Boston to LaGuardia Airport in New York City, and from there to 51 West 81st Street. Corporal Fleming states that he observed Yeomans carrying one dark grey suitcase. Corporal Fleming later observed Yeomans leaving 51 West 81st Street with Glenn Williams and Nancy Cabral. Yeomans was then carrying two suitcases. Yeomans was arrested later that evening at the Eastern Airlines Shuttle Terminal at LaGuardia Airport en route to Boston. His suitcases were searched and were found to contain seventeen pounds of hashish.

3) The affidavit of RCMP Constable Roland B. MacNeil attests to his surveillance of Yeomans prior to the time Yeomans was followed by Fleming. Yeomans traveled from Canada to Boston, where he took a cab to Scott Williams's home. Both Scott Williams and Yeomans were followed around Boston. Following the subsequent events described in the Fleming affidavit, Constable MacNeil also observed Yeomans leave the 51 West 81st Street building in New York City with Glenn Williams and Nancy Cabral.

Constable MacNeil also interviewed Yeomans following Yeoman's arrest in New York. Constable MacNeil's affidavit states:

YEOMANS told me he went to New York City to pick up 17 pounds of Cannabis Resin (Hashish) for Scott WILLIAMS. YEOMANS stated he was to take the hashish back to Boston. YEOMANS said he put $2,000.00 of his own money into the deal and was going to make a $2,000.00 profit. YEOMANS stated he had paid Glenn Wade Williams $5,400.00 for the hashish and that Scott Edward WILLIAMS still owed his brother Glen Wade Williams $17,000.00 for the hashish.

Upon careful review of the evidence presented by the Government of Canada, this court is of the opinion that the evidence is not sufficient to establish reasonable or probable cause to believe that Glenn Williams committed the crime of conspiracy to import narcotics into Canada. The evidence is simply not sufficient to establish reasonable or probable cause to believe that Glenn Williams conspired with Scott Williams, Michael Yeomans, or anyone else to import hashish into Canada. At the very most, the court might infer that Scott Williams arranged to have Yeomans pick up hashish from Glenn Williams and that Yeomans was to bring the hashish to Boston. There may or may not be evidence sufficient to establish that Glenn Williams possessed hashish, sold hashish, or even conspired to distribute hashish within the United States, but these crimes are simply immaterial to the present extradition proceeding.

The evidence simply does not establish reasonable or probable cause to believe that Glenn Williams agreed to, or was part of, a conspiracy to import hashish into Canada. The intercepted telephone conversations certainly lend no support to the Government of Canada's position. Glenn Williams was neither a party to those conversations nor even mentioned in those conversations. Even the speculation that Yeomans was the "he" or "friend" referred to during those conversations is of no support to the Government of Canada. Certainly the conversations contained nothing which would imply that *Glenn Williams* agreed to, or even knew of, a conspiracy to import hashish into Canada.

Similarly, the Canadian officers' observations that Glenn Williams left an apartment building with Yeomans is insufficient to establish reasonable or probable cause to believe that Glenn Williams was part of a conspiracy to import hashish into Canada. Even assuming that Glenn Williams did sell hashish to Yeomans inside the building, the mere fact that Glenn Williams sold hashish to Yeomans does not establish reasonable or probable cause to believe that Glenn Williams knew, or planned, that Yeomans intended to bring the hashish into Canada.

The statement allegedly made by Yeomans to Constable MacNeil is subject to the same defect. Yeomans merely stated that he picked up hashish from Glenn Williams in New York City to take to Scott Williams in Boston, and that Yeomans paid Glenn Williams some money for the hashish. Yeomans did not state that he discussed with Glenn Williams any plans for taking the hashish into Canada. (In fact, Glenn Williams's attorney has noted that Yeomans, himself, may have had no intention of bringing any hashish back to Canada. In any case, the Yeomans statement simply lends little, if any, support to the theory that Glenn Williams conspired to import hashish into Canada.)

The Government of Canada could perhaps be correct in its suggestion that Glenn Williams supplied hashish to Yeomans and that Yeomans intended to bring the hashish to Canada after first returning to Boston. However, any suggestion that Glenn Williams conspired to import hashish into Canada, or any suggestion that Glenn Williams knew of, or agreed to, Yeomans's alleged plan to import hashish, is mere speculation. The evidence, considered collectively, does not meet the standard necessary in an extradition proceeding; the evidence fails to establish reasonable or probable cause to believe that Glenn Williams committed the crime of conspiracy to import narcotics into Canada.

For the reasons stated above, the Government of Canada's request for the extradition of Glenn Williams must be denied.