**UNITED STATES, Appellee,**

v.

**Peter NOONE, Defendant, Appellant.**

**No. 90–1664.**

United States Court of Appeals,
First Circuit.

Heard May 6, 1991.
Decided July 16, 1991.

Owen S. Walker, Federal Defender Office, for defendant, appellant.

Mary Elizabeth Carmody, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge,
COFFIN, Senior Circuit Judge, and
TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

Peter Noone appeals his conviction for fleeing

> to avoid prosecution ... under the *laws of the place* from which he flees, for wilfully ... damaging ... any building ... by explosive....

18 U.S.C. § 1074 (emphasis added). 735 F.Supp. 443. The determinative legal question on this appeal concerns the meaning of the italicized words "laws of the place." Noone argues that those words refer to *state* anti-bombing laws, not to *federal* anti-bombing laws. We conclude that Noone is right; and since he left Massachusetts to avoid a *federal*, not a *state*, prosecution, we must reverse his conviction.

The language of the statute, by itself, does not answer the interpretive question before us. The statutory provision, in its entirety, says the following:

> Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody, or confinement after conviction, *under the laws of the place from which he flees,* for wilfully attempting to or damaging or destroying by fire or explosive any building, synagogue, church, religious center or educational institution, public or private, or (2) to avoid giving testimony in any criminal proceeding relating to any such offense shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1074(a) (emphasis added). On the one hand, as the Government points out, federal laws are "laws of the several states, and just as much binding on the citizens and courts thereof as the state laws are," *Claflin v. Houseman,* 93 U.S. 130, 136, 23 L.Ed. 833 (1876). Moreover, clause (2) in the provision refers to *"any* criminal proceeding." On the other hand,

the language "laws of the place" seems somewhat more restrictive than the words "any criminal proceeding," and it has the ring of a term of art. In light of this uncertainty, we have examined the context, history and purposes of the statute. Our examination has led us to accept the restrictive "state law"-only interpretation of the statute.

First, the statute's history suggests that Congress enacted it to provide the federal government with a legal basis for apprehending, and possibly prosecuting, those fleeing to avoid state, not federal, prosecutions. Congress enacted § 1074 in 1960. When doing so, it copied, almost word for word, the Fugitive Felon Act, 18 U.S.C. § 1073, which immediately precedes the statutory provision now before us in the United States Code. That Act (as it read from 1943 to 1961) made it a crime for a person to flee

> to avoid prosecution ... under the *laws of the place* from which he flees, for murder, kidnapping, burglary, robbery, mayhem, rape, assault with a dangerous weapon, arson, punishable as a felony, or extortion accompanied by threats of violence ... as they are defined either at common law or by the laws of the place from which the fugitive flees....

18 U.S.C. § 1073 (emphasis added). Congress realized, when it passed this provision in 1943 that, without some such law, the FBI lacked the jurisdictional basis needed to search for, and to arrest, perpetrators of serious *state* (but not *federal*) crimes. Waxner and Eisenstein, 8B Moore's Federal Practice ¶ 40.04, 40–22 to 40–23 (for federal agents to act "a federal crime must be involved"). The 1943 law filled this jurisdictional gap in respect to serious state crimes, thereby permitting the FBI to help state authorities apprehend criminals even though state, not federal, authorities would subsequently prosecute them. The 1960 statute before us seems designed simply to add bombing crimes to the 1943 statute's list. *See* House Rep. No. 956, 86th Cong., 2d Sess., *reprinted in* 1960 U.S.Code Cong. & Adm.News, 1939, 1942–43 ("The proposal would make it a felony ... to move in interstate or foreign commerce, to avoid *local* prosecution ... Such criminal offenses as these bombings present very difficult investigation and detection problems for *local* law enforcement agents.... It is believed that the [FBI] can provide the much needed experience and scientific investigative technique to assist—as it has done in the past—*local* law enforcement officials....") (emphasis added). To achieve this law enforcement purpose the words "laws of the place" (which appear in identical form in both the 1943 and 1960 statutes) need not include *federal* substantive criminal laws.

Second, we have not found a word in the legislative history of either statute that suggests anyone in Congress thought the words "laws of the place" would include federal laws. The Government cites, in support of its interpretation, a Library of Congress report, prepared in *1970,* to help Congress in its consideration of a different law, the federal anti-bombing statute, 18 U.S.C. § 844(i). That Report, in its summary of prior law, says that the pre-existing "fugitive from justice provisions"

> make it a federal crime to travel in interstate commerce to avoid prosecution or confinement for damaging any building or vehicle with an explosive or avoid giving testimony *in any criminal proceeding relating to such a crime.*

*Explosives Control: Hearings on H.R. 17154 Before Subcommittee No. 5 of the House Committee on the Judiciary,* 91st Cong., 2d Sess. 2 (1970) (Report of the Library of Congress Legislative Reference Service) (emphasis added). The Report adds in its summary that

> ... Federal legislation now in effect ... prohibits the use of interstate facilities or crossing of state boundaries *to escape local trial or punishment for illegal use of explosives....*

*Id.* (emphasis added). One fatal problem with this "legislative" support is that the second of the underlined provisions uses the word "local"—a word that suggests a restricted interpretation, or, at the least, is no more enlightening than the words "laws of the place." Another, equally fatal, flaw is that the first of the underlined provisions

refers to a different part of the statute before us, the part contained in clause (2) that concerns the giving of testimony. Clause (2) speaks of testimony "in any criminal proceeding relating to *any such offense.*" Thus, it refers us back to "laws of the place," which the report describes as "local." Regardless, whether this different part of the 1943 and 1960 statutes refers only to state law crimes has not been argued by the parties and is not at issue in this case.

Third, the history of prosecutions under both the Fugitive Felon Act and the 1960 Act supports the restrictive interpretation. We have found no reported Fugitive Felon Act decision, or 1960 Act decision, involving flight to escape a *federal* prosecution. And, language in Fugitive Felon Act cases (including pre–1960 cases to which Congress may have referred) describes the statute as applicable to *state* or *local* criminal prosecutions. *See, e.g., United States v. Brandenburg,* 144 F.2d 656, 662 (3d Cir.1944) ("If we boil the Act down … it will read, 'It shall be unlawful for any person to move in interstate commerce with intent to avoid prosecution for burglary under the law of the State from which he flees.' "); *Hemans v. United States,* 163 F.2d 228, 239 (6th Cir.) ("The general purpose of the Fugitive Felon Act was to aid the enforcement of state laws"), *cert. denied,* 332 U.S. 801, 68 S.Ct. 100, 92 L.Ed. 380 (1947); *United States v. Thurman,* 687 F.2d 11, 11 (3d Cir.1982) (Section 1073 "makes it a federal crime to flee a state to avoid prosecution for a state felony").

Fourth, we have found four other instances in which federal statutes use the words "law of the place." In each instance, courts have interpreted the phrase to refer to state or local, and not to federal law. They include the following:

a. *The Federal Tort Claims Act,* 28 U.S.C. § 1346(b), permits actions against the federal government

under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the *law of the place* where the act or omission occurred.

The phrase "law of the place" as used in the FTCA "refers exclusively to state law". *Brown v. United States,* 653 F.2d 196, 201 (5th Cir.1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982).

b. *Extradition treaties with foreign nations* routinely provide that

Extradition shall be granted only if the evidence be found sufficient, according to *the laws of the place* where the person sought shall be found … to justify his committal for trial.

*See Shapiro v. Ferrandina,* 478 F.2d 894, 901 (2d Cir.1973) (quoting the American–Israeli Extradition Treaty) (emphasis added). This phrase has been interpreted as referring to state law. *Id.* ("the phrase 'the laws of the place where the person sought shall be found' refers to the law of the state where the arrest occurs rather than the laws of the United States").

c. Title 11, section 1056 of the (now superseded) *1898 Bankruptcy Act,* provided

Before confirming any such plan the court shall require proof from each creditor filing a claim that such claim is free from usury as defined by the *laws of the place* where the debt was contracted.

11 U.S.C. § 1056(b) (repealed 1978). Every case that we have found applying this provision refers to state law. *Cf., e.g., In re Bogan,* 281 F.Supp. 242, 246 (W.D.Tenn.1968) (applying law of Tennessee to determine if a claim is usurious); *In re Richards,* 272 F.Supp. 480, 483 (D.Me.1967) (applying Maine law of usury).

d. A *federal death penalty provision* says that

the manner of inflicting the punishment of death shall be that prescribed by the *laws of the place* within which the sentence is imposed.

18 U.S.C. § 3566 (repealed 1986) replaced a provision which had referred to the law

of the *state* explicitly, "so as to make it clear that this section applies to a district, possession or territory, as well as to a state." Historical and Revision Notes, 18 U.S.C.A. § 3566. Accordingly, the courts have looked to state or local law for the manner of execution. *See Andres v. United States*, 333 U.S. 740, 745, 68 S.Ct. 880, 882, 92 L.Ed. 1055 (1948) (looking to Hawaiian law); *Feguer v. United States*, 302 F.2d 214, 216 (8th Cir.1962) (looking to Iowa for method of imposing sentence of death); *Rosenberg v. Carroll*, 99 F.Supp. 630, 631 (S.D.N.Y. 1951) (applying New York law to conditions of prisoner on death row).

Each of these statutes arises in a different context; each of these contexts is distinguishable from the present statute. In some of them, it is obvious that the statute *must* apply to state law alone, for there is no relevant federal law. Nonetheless, federal law has uniformly used the phrase "laws of the place" to refer to state law, not federal law, and that fact supports a similar interpretation here. *See Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952); *Dewees v. Commissioner*, 870 F.2d 21, 33 (1st Cir. 1989).

Fifth, it is difficult to see any significant federal law enforcement need to adopt the Government's broad interpretation of the statute. The substantive conduct involved—fleeing to avoid a prosecution—is not the kind of conduct that the law typically criminalizes and separately punishes. We have found no state statute that criminalizes ordinary pre-arrest flight, the type of flight characteristic of any offender who does not turn himself into law enforcement authorities immediately after the crime. Ordinarily flight is not criminal unless it takes place *after* arrest, indictment, trial, or conviction, or some other special circumstance. Thus, we cannot assume Congress wished to penalize this kind of flight (from future federal proceedings) in order to fill some kind of substantive "gap" in federal criminal law. Moreover, there are other federal statutes that separately criminalize and punish flight after proceedings have commenced. *See* 18 U.S.C. § 3146 (criminalizing bail jumping); 18 U.S.C. § 751 (criminalizing escape). Thus, we cannot assume any need for a broad interpretation of the words "laws of the place" in the Fugitive Felon statute in order to permit federal prosecutions for flight from "custody or confinement after conviction."

The Government argues that its broad interpretation avoids an "absurd" result, namely that criminal liability under the statute would depend upon the fortuity of which jurisdiction—state or federal—prosecutes the bombing. Given the likely reasons for enactment of the statute, however, we see nothing absurd or fortuitous about finding this statute violated when the state rather than the federal government prosecutes the bombing.

The Government also points out that the Fugitive Felon Act requires the Attorney General's permission to prosecute a violator, *see* 18 U.S.C. § 1074, but the 1960 Act does not. We agree with the Government's description, but we do not see how that fact could make a critical difference.

In sum, we can find no good reason why Congress would have wished to turn many (perhaps most) *federal* crimes into two crimes, one when the offender commits the crime and another when he fails to turn himself in and instead leaves the state where the offense occurred. We can find perfectly good reasons why Congress might have wanted to penalize flight to avoid prosecution for state law crimes. Indeed, we have found those reasons prominently mentioned in the legislative history of the statute in question. Moreover, the language that Congress used in the statute, as used elsewhere in the law, refers restrictively to the laws of states or localities, not federal law. And, case law is consistent with this restrictive interpretation. Consequently we conclude that the phrase "laws of the place" as used in these statutes is a term of art, that it refers to state or local law, not to federal law, and that the defendant's conviction must therefore be

*Reversed.*