In the Matter of the **EXTRADITION OF Shoshannah Elisheba SCHWEIDENBACK.**

**No. 98–M–0405RBC.**

United States District Court,
D. Massachusetts.

April 16, 1998.

Donald Cabell, Assistant U.S. Attorney, Boston, MA, for United States.

David Cass, Frederick Cass, North Kingstown, RI, for Defendant.

### MEMORANDUM AND ORDER ON THE DEFENDANT'S MOTION TO QUASH WARRANT (# 8) AND MOTION FOR A CHANGE OF VENUE (# 10)

COLLINGS, United States Magistrate Judge.

In this extradition case, several issues arose during the first appearance of Shoshannah Elisheba Schweidenback in the District of Massachusetts which shall be addressed in this memorandum.

At the outset, in a Motion to Quash Warrant (# 8) the jurisdiction of the United States District Court for the District of Massachusetts under Title 18 U.S.C. § 3184 is challenged because, although the complaint was issued in this district, Ms. Schweidenback was arrested in the state of Rhode Island. In other words, it is argued that Ms. Schweidenback was not "found within [this Court's] jurisdiction." *See* 18 U.S.C. § 3184. Another court facing a similar argument, i.e., that the statute "limits jurisdiction over international extradition proceedings to the federal district where a fugitive is actually apprehended" wrote as follows:

> There is no compelling precedent that requires the word "found" to be limited only to "apprehended" or "arrested" as the petitioner contends. While it is true that a fugitive arrested in a particular district is "found" in that district there is no reason why he cannot also be "found" in a district with which his contacts are particularly strong.
>
> As a matter of fact the Judge who signs the warrant of arrest which starts the extradition proceeding does not know where the fugitive will actually be found. It can hardly be fatal to a treaty arrangement between two high contracting parties that it turns out that the fugitive is actually found in a district other than the district from which the warrant issued.

*Shapiro v. Ferrandina,* 355 F.Supp. 563, 568 (S.D.N.Y.1973); *see also Shapiro v. Ferrandina,* 478 F.2d 894, 898 (2 Cir.), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973) ("[C]ommon sense dictates a holding that such a complaint and warrant would support an arrest in another district, provided that the government reasonably and in good faith believed that the person sought could be found within the district which issued the warrant and intended to arrest him there, *compare Pettit v. Walshe,* 194 U.S. 205, 24 S.Ct. 657, 48 L.Ed. 938 (1904)").

█ This reasoning makes eminent sense. So long as the government has a basis in fact to believe that the person sought to be arrested will be found in a certain district, the complaint may be filed in that district and the warrant issued.

█ I find that the government did have such a basis in fact given that Ms. Schweidenback has numerous extended family members in Massachusetts and that she caused her children's Canadian school records to be sent here, both factors indicative of significant ties to the Commonwealth. In these circumstances, that she was not ultimately "found" in Massachusetts does not undercut the Court's jurisdiction over this matter. Accordingly, the motion to quash warrant will be denied.

█ Several ancillary issues must be resolved before the Court can decide the ultimate issue raised by the motion to transfer venue to Rhode Island. There is a dispute between the parties as to the standard of probable cause to be employed in this case. The government contends that the federal standard is controlling.[1] In light of First Circuit precedent, the government's position is untenable.

Discussing the identical language at hand, the First Circuit has written:

The parties appear to agree that under the relevant Canada–United States Extra-

dition Treaty, "extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found to justify his committal for trial," (emphasis added) in other words, according to the laws of Massachusetts since that was where petitioner was arrested.

*Romeo v. Roache,* 820 F.2d 540, 545 (1st Cir.1987); *see also United States v. Noone,* 938 F.2d 334, 336 (1st Cir.1991)("Extradition treaties with foreign nations routinely provide that '[e]xtradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found...to justify his committal for trial.'") *See Shapiro v. Ferrandina,* 478 F.2d 894, 901 (2d Cir.1973)(quoting the American–Israeli Extradition Treaty)(emphasis added). This phrase has been interpreted as referring to state law. *Id.* ("The phrase 'the laws of the place where the person sought shall be found' refers to the law of the state where the arrest occurs rather than the laws of the United States'"); *Greci v. Birknes,* 527 F.2d 956, 958 (1st Cir.1976); *Romeo v. Roche,* 1987 WL 12547, *1 (D.Mass.).

It is true that there is a line of cases holding that "the probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings." *See, e.g., Sidali v. Immigration and Naturalization Service,* 107 F.3d 191, 199 (3 Cir., 1997) (citations omitted). These cases principally rely upon the Second Circuit decision in *Sindona v. Grant,* 619 F.2d 167 (2 Cir., 1980) as precedent for this conclusion. In *Sindona,* the court was construing treaty language which differs from that at hand:

The first [argument] derives from Article V of the Treaty, which provides in relevant part:

Extradition shall be granted only if the evidence be found sufficient, according

---

1. It is noted that one of the cases cited by the government contradicts its assertion with respect to the applicable standard. Construing the very treaty at issue herein, more specifically Article 10 of the Treaty on Extradition Between the United States and Canada, the district court wrote "[t]he

phrase, 'according to the laws of the place where the person shall be found,' refers to state law, in this case the laws of the State of New York." *In the Matter of the Extradition to Canada of Glenn Williams,* 496 F.Supp. 16, 17 (S.D.N.Y., 1979) (citation omitted).

to the laws of the requested Party,...to justify (the requested person's) committal for trial if the offense of which he is accused had been committed in its territory...

Sindona contends that the test under the Treaty is United States national procedural law and not the procedural law of New York, a proposition with which we agree, *Greci v. Birknes,* 527 F.2d 956 (1 Cir.1976).

*Sindona,* 619 F.2d at 175.

The First Circuit in the *Greci* case decided that the language of the treaty controls, and that distinctions must be made:

Treaties on extradition have commonly been interpreted as adopting state standards governing the sufficiency of the evidence to justify committal for trial, on the ground that most extraditable offenses were known only to state law. However, the cases to this effect were not decided under the treaty language now before us; and the circumstances surrounding adoption of the present language indicate that it was adopted in order to replace the traditional state standard with a federal one.

The original version of Article V of the 1973 treaty provided that sufficiency would be determined according to the 'laws of the place where the person sought shall be found,' language similar to that in the 1868 Convention. In the 1970 negotiating session, the Italian delegation insisted that this be changed to 'laws of the requesting Party.' Both delegations appear to have been aware of cases construing the discarded language to refer to state law...; both appear to have contemplated that the change would ensure that this construction cannot be carried forward and that uniform federal law be applied.

*Greci v. Birknes,* 527 F.2d 956, 958-9 (1 Cir.1976) (citations and footnotes omitted).

To the extent that courts have adopted the legal proposition set forth in *Sindona* as a mantra for the applicable probable cause standard in extradition cases without examining the language of the treaty at issue, I believe them to be in error.

In sum, based upon the language of the treaty now at issue and the construction given to it by the First Circuit in prior cases, I find it is the state standard of probable cause that is the appropriate one to be applied.

Having reached this conclusion, yet another question is presented: Is it the state law of Rhode Island where Ms. Schweidenback was arrested or that of Massachusetts where the complaint and warrant issued that is controlling? This is not a distinction without a difference. According to the general laws of Rhode Island:

After conducting the hearing the court shall determine from an examination of the information and exhibits appended to it, and in light of any evidence presented at the hearing, whether there exists probable cause to believe that the offense charged has been committed and that defendant committed it. A finding of the existence of probable cause may be based in whole or in part upon hearsay evidence or on evidence which may ultimately be ruled inadmissible at the trial.

R.I. Gen. Laws § 12–12–1.9.

Under Massachusetts law, the Supreme Judicial Court has determined that the

standard of probable cause to bind over must require a greater quantum of legally competent evidence than the probable cause to arrest finding to insure that the preliminary hearing's screening standard is defined in a way that effectuates its purpose.

*Myers v. Commonwealth,* 363 Mass. 843, 849, 298 N.E.2d 819, 824 (1973)(footnote omitted).

More fully explaining, the SJC wrote in a footnote:

Since the primary objective of the probable cause hearing is to screen out those cases where the legally admissible evidence of the defendant's guilt would be insufficient to warrant submission of the case to a jury if it had gone to trial, the rules of evidence at the preliminary hearing should in general be the same rules that are applicable at the criminal trial. 'The probable cause hearing is conducted in the same manner as any other trial in the District Court.' Unlike a finding of

probable cause for arrest which can be based solely on reliable hearsay testimony, probable cause to hold the defendant for trial must be based on competent testimony which would be admissible at trial.

*Myers,* 363 Mass. at 849 n. 6, 298 N.E.2d at 824 n. 6 (citations omitted).[2]

In other words, the laws of Rhode Island are more favorably disposed to the government by allowing the use of hearsay and inadmissible evidence while the laws of the Commonwealth require the government to present a more formal showing. Deciding which state law is applicable turns on the construction to be given the phrase "according to the laws of the place where the person sought be found" in Article 10(1) of the treaty.

▇ As previously noted, in at least two cases the First Circuit has interpreted that language in a treaty to mean the law of the state in which the person was arrested. *See Noone,* 938 F.2d at 336; *Romeo,* 820 F.2d at 545. Such a conclusion is not inconsistent with the Court's earlier interpretation of the meaning of the word "found" as employed in 18 U.S.C. § 3184. The statutory context is of necessity uncertain and forward looking, whereas the location where an individual is ultimately discovered is fixed and determinable. Based upon my reading of the law, I find that it is the state law of Rhode Island that applies in determining "if the evidence be found sufficient... to justify [Ms. Schweidenback's] committal for trial if the offense of which [s]he is accused had been committed in its territory."

▇ A final question is whether Ms. Schweidenback is entitled to present evidence of a defense to the underlying charge when resisting extradition. The First Circuit has explained that:

2. The First Circuit recently wrote that
an extradition hearing does not require a higher standard of evidence than a probable cause hearing. The special and limited nature of extradition hearings is manifested in a more lenient standard for admissibility of evidence....The evidence may consist of hearsay, even entirely of hearsay. So American domestic law has already resolved against Lui any claim that there is a violation of Constitutional

Although it is within the discretion of the district court to permit the relator to offer limited, explanatory evidence relating to the charges against him, *Collins v. Loisel,* 259 U.S. 309, 315–317, 42 S.Ct. 469, 471–72, 66 L.Ed. 956 (1922); *Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); *Jimenez [v. Aristeguieta],* 311 F.2d [547] at 556 [5th Cir.1962, *cert. denied,* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963)], contradictory evidence properly may be excluded, *Charlton,* 229 U.S. at 461, 33 S.Ct. at 949; *Shapiro v. Ferrandina,* 478 F.2d 894, 901 (2d Cir.), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). While the line between "contradictory" and "explanatory" evidence is not sharply drawn, the purpose of permitting explanatory evidence is to afford the relator "the opportunity to present reasonably clear-cut proof which would be of limited scope and have reasonable chance of negating a showing of probable cause." *Matter of Sindona,* 450 F.Supp. 672, 685 (S.D.N.Y.1978). On the other hand, it is well-established that "extradition proceedings are not to be converted into a dress rehearsal trial."

*Koskotas v. Roche,* 931 F.2d 169, 175 (1st Cir.1991)(further citations omitted). Courts have uniformly held that evidence relating to or establishing a defense is excludable. *See, e.g., Collins v. Loisel,* 259 U.S. 309, 315–7, 42 S.Ct. 469, 66 L.Ed. 956 (1922)(approving exclusion of evidence "related strictly to the defense"); *Charlton v. Kelly,* 229 U.S. 447, 461–2, 33 S.Ct. 945, 57 L.Ed. 1274 (1913)(approving exclusion of evidence of insanity as a defense); *Shapiro,* 478 F.2d at 901; *In the Matter of the Extradition of Gunther Lehming,* 951 F.Supp. 505, 514–5 (D.Del.1996); *In the Matter of the Extradition of Kamel Nacif–Borge,* 829 F.Supp. 1210, 1219 (D.Nev. 1993); *In the Matter of the Extradition of*

rights from the admission of hearsay evidence at a probable cause hearing which would not be admitted at trial.
*United States v. Lui Kin–Hong,* 110 F.3d 103, 120 (1st Cir.1997).
From all that appears, in that case the relevant treaty called for the application of federal law. *Id.* at 112–13 (treaty referring to an offense punishable "under the laws of both *Parties.)"* (Emphasis added).

*Sukhminder Singh,* 124 F.R.D. 571, 573 (D.N.J.1987). In the face of such overwhelming authority, Ms. Schwedenback shall not be permitted to offer evidence relating strictly to a defense, statutory or otherwise.

█ Given these rulings, a transfer pursuant to Rule 21(b), Fed.R.Crim.P., is not warranted. The extradition hearing will be limited by the fact that the probable cause standard of the state of Rhode Island will be applicable and the fact that the defendant will not be permitted to offer evidence of any defense she might present to the Canadian courts. Thus, I do not find that it is in the interests of justice or the convenience of the parties or witnesses to transfer the case. In my judgment, a transfer would merely result in a delay of the extradition hearing.

Accordingly, it is ORDERED that the Motion to Quash Warrant (# 8) and the Motion for Change of Venue (# 10) be, and the same hereby are, DENIED.