**Sixto SIERRA PEREZ, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 90–2222 (JAF).**

United States District Court, D. Puerto Rico.

Oct. 25, 1991.

Armando Cardona–Estelritz, Isidro Garcia Pesquera Law Offices, San Juan, P.R., for plaintiffs.

Daniel F. López–Romo, U.S. Atty., Isabel Muñoz–Acosta, Asst. U.S. Atty., San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs Sixto Sierra Pérez, a former employee of the Veterans Canteen Service ("VCS") at the Veterans Affairs Medical Center ("VA") in San Juan, Puerto Rico, and various family members commenced this action against the United States government pursuant to the Federal Tort Claims Act ("FTCA"), as amended, 28 U.S.C. §§ 2671–2680. Plaintiffs alleged that defendant's tortious conduct resulted in personal injury, property damage, and mental anguish. Specifically, they claimed that the circumstances surrounding Sierra Pérez' dismissal amounted to employment discrimination. They also raised a potential medical malpractice claim for the VA and one of its employee physician's handling and disclosure of blood test results showing that Sierra Pérez had tested positive for the Acquired Immuno–Deficiency Syndrome ("AIDS").

The government has moved for summary judgment asserting various grounds. First, defendant argues that the employment discrimination claim should be dismissed either: (a) because the claim is not cognizable under the FTCA, or (b) plaintiffs have failed to exhaust administrative remedies. As to the cause of action based on alleged medical malpractice, defendant argues that plaintiffs have failed to state a claim. Although this court granted plaintiffs a thirty-day extension in which to oppose defendant's motion (Docket Document No. 15), they filed no opposition.[1]

For the reasons outlined below, we *grant* the government's motion for summary judgment and *dismiss* plaintiffs' complaint.

## I.

### *Facts*

Plaintiff Sierra Pérez began his employment with the VCS in June 1981. His Notification of Personnel Action, (Docket Document No. 15, *Exhibit B*), stated that he was appointed to the position of food service worker pursuant to 38 U.S.C. § 4202(5).[2] Plaintiff's position is classified as an excepted appointment and, as such, is generally not subject to the federal civil service law.

In 1983, subsequent to plaintiff's appointment, VCS workers in San Juan became affiliated with the American Federation of Government Employees, AFL–CIO ("union") and became subject to the terms of the collective bargaining agreement ("CBA") negotiated between the union and the VA. The CBA provided procedures to be followed before disciplinary and/or adverse actions such as removal could be taken by the VCS. Also, the CBA contained certain steps for the resolution of grievances filed by employees. Unresolved grievances could be taken by the union or management to arbitration.

Plaintiff claims that his employment problems began in August 1987, when the VCS announced an opening for a food service worker. Plaintiff applied for the position, which would have resulted in a promotion. However, a fellow worker, Luis Colón Matos, was chosen to fill the position. Colón had worked with the VCS since 1973 and had a higher work classification than plaintiff.

Around the time of the promotion denial plaintiff complained to the union that the VCS supervisor, Mr. Bloom, was harassing him. After this, according to plaintiff, relations with his supervisors deteriorated and the latter began to take adverse actions against him in reprisal for his complaint to the union. One alleged incident occurred on October 6, 1987, when Bloom stopped plaintiff on a stairway and, in the presence of coworkers and others, questioned the latter as to the contents of a paper bag. According to plaintiff, the supervisor sought to demonstrate that the goods in the bag were stolen. Following the incident, plaintiff filed a formal grievance with the union.

---

**1.** *See Postscript, infra.*

**2.** Section 4202(5) authorizes the Administrator of the VA to employ personnel necessary for the establishment, maintenance, and operations of the VCS.

This grievance was scheduled to be heard on November 23, 1987. However, because of plaintiff's illness, the union requested an extension of time. In his deposition plaintiff admits that he did not continue the grievance process after he was terminated from his employment. (Docket Document No. 15, *Exhibit I* at 41).

On October 1, 1987, plaintiff consented to a voluntary blood test to determine whether antibodies against the "HTLV–III/LAV" virus were present. The consent form which plaintiff signed explained that this virus caused AIDS. It went on to relate that a positive finding did not, in and of itself, confirm that a person has AIDS. Rather, a positive result meant that the person had been exposed to the virus at some time. Before one is diagnosed as having AIDS, along with a positive result on the test, evidence must usually be found of an infectious condition caused by microorganisms not frequently encountered, a tumor, or an unusual condition. Also, the consent form explained that the test results would be part of the employee's medical file but would not be revealed to the public without the person's authorization. The only exception to the rule of nondisclosure would be the release of the information to public health authorities, if so required.

On October 13, 1987, the results of the test came back reactive to the virus. Plaintiff was also referred to the "Centro Latinoamericano de Enfermedades de Transmisión Sexual" ("CLETS") for further examinations. (Docket Document No. 15, *Exhibit N*). A second AIDS test, the Western Blot, was later administered to plaintiff.

On the following day, Dr. Sonni, a VA employee and plaintiff's treating physician, sent a memo to the Chief, Personnel Service, informing as to plaintiff's work status. The memo reads in its entirety:

1. This is to inform that Mr. Sixto Sierra Pérez—SSN: 105–58–9410 was found in routine blood examination unfit for work.

2. He should not work in food department, food handling or in direct patient care.

3. We recommend that (sic) should be separated from his job and declared permanently disabled.

(Docket Document No. 15, *Exhibit O*).

Subsequently, plaintiff was removed from his position. In a memo from the Chief, Personnel Service, dated October 26, 1987, he noted that, based on his medical condition, plaintiff had to be reassigned to another position in the VCS and that no suitable positions were available and that, as an excepted service employee, he was not entitled to reassignment to the competitive service. He also noted that plaintiff expressed his desire to apply for disability retirement. The Chief requested the medical documentation necessary to process plaintiff's retirement. (*Id., Exhibit P*). In a January 8, 1988 memo, Dr. Sonni noted that plaintiff had failed to complete the physical disability exams necessary to make a disability determination.

Plaintiffs' complaint added only that, on October 21, 1987, upon reporting to work, plaintiff Sierra Pérez was confronted by co-workers who "looked at him insistently and/or in a strange manner and greeted him with cryptic, evasive remarks about his state of health and/or the way he felt." (Complaint ¶ 19). He inferred from these facts that they were informed of his medical condition prior to his own notification in violation of his confidentiality and privacy rights. (*Id.* ¶ 20).

By mid-January 1988, the results of the Western Blot test came back and Sierra Pérez had tested negative for AIDS. (Docket Document No. 15, *Exhibit S*). Following this, Dr. Sonni attempted to contact plaintiff to inform him of these latest results but plaintiff never contacted the doctor. Also, his VCS supervisor sent a certified letter dated January 19, 1988, requesting plaintiff's presence at Dr. Sonni's office on January 26, 1988. Again plaintiff did not respond.

Finally on March 11, 1988, again by certified mail, plaintiff was informed that he had been separated from the VCS based on his abandonment of the position. (*Id., Exhibit V*).

## II.

### *Summary Judgment Standard*

■ Defendant has made a motion for summary judgment pursuant to Fed. R.Civ.P. 56. A court should grant a motion for summary judgment "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). The two inquiries which the court must make before granting or denying a motion for summary judgment relate to the *materiality* and the *genuineness* of the factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Sheinkopf v. Stone*, 927 F.2d 1259, 1261 (1st Cir.1991); *Local No. 48, United Brotherhood of Carpenters & Joiners v. United Brotherhood of Carpenters & Joiners*, 920 F.2d 1047, 1050 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

■ In order to determine whether the factual dispute between the parties is "material", the substantive law will identify which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Sheinkopf*, 927 F.2d at 1262; *see generally* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2725 at 93–95 (1983).

■ The second determination relates to the "genuineness" of the dispute about the material facts. In *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510, the Court explicitly stated that a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." It is not required that the party opposing summary judgment, in asserting the existence of an issue of material fact, resolve it conclusively in order to proceed to trial but rather that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial," *First Nat. Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968), thereby resolving the factual issues "before the related legal issues can be decided." *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989); *Sheinkopf*, 927 F.2d at 1262.

■ Further, when a motion for summary judgment is made, it is important to be precise as to the parties' burdens of production and persuasion.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion until the Court finds that the moving party has discharged its initial burden of production.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (citations omitted); 10A Wright, Miller & Kane § 2727. The initial burden of production imposed on the moving party is to make a *prima facie* showing that it is entitled to summary judgment and, where it is the moving party who will have the burden of persuasion at trial, the motion must be supported by credible evidence "that would entitle it to a directed verdict if not uncontroverted at trial." *Celotex*, 477 U.S. at 331, 106 S.Ct. at 2557. Only then does the burden of production shift to the party opposing the motion. Where it is the nonmoving party who will have the burden of persuasion at trial, the moving party may satisfy the Rule 56 burden of production in one of two ways.

First, the moving party may submit affirmative evidence that negates an essen-

tial element of the nonmoving party's claim. Second the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* 10A Wright, Miller & Kane § 2727, pp. 130–131; Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745, 750 (1974). *Celotex*, 477 U.S. at 331, 106 S.Ct. at 2557. When the moving party chooses the second option and moves for summary judgment on the ground that the nonmoving party— who will bear the burden of persuasion at trial—has no evidence, the moving party "must affirmatively show the absence of evidence in the record." *Celotex*, 477 U.S. at 331–32, 106 S.Ct. at 2556–57. Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved *against* the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970), and courts "must review the evidentiary record in the light most hospitable to the nonmovant and must indulge all reasonable inferences in his favor." *Sheinkopf*, 927 F.2d at 1262.

Here, defendant has met its initial burden of production and has come forward with credible evidence entitling it to summary judgment on both the discrimination and tort-malpractice claims. Plaintiffs have not opposed defendant's motion nor have they come forward with evidence to raise an issue of fact for trial. As the First Circuit has opined, "[i]n the precincts patrolled by Rule 56, the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence." *Kelly v. U.S.*, 924 F.2d 355, 358 (1st Cir.1991). Here, as in *Kelly*, because defendant's evidence is uncontroverted, Rule 56 jurisprudence demands that we accept defendant's version of the facts as true. While we are still obliged to consider the merits of defendant's motion before granting summary judgment, *see Kelly*, 924 F.2d at 358; *Méndez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 7 (1st Cir.1990); *Jaroma v. Massey*, 873 F.2d 17, 19–20 (1st Cir.1989), the fail-

ure to contest the opposing party's version of the facts can often times toll the death knell of a potential claim. Such is the case in the matter before us. Plaintiffs' failure to oppose leaves us no alternative but to grant defendant's motion for summary judgment.

## III.

### *Discussion*

### A. "Discrimination" Claim

Part of plaintiffs' claim is that both Sierra Pérez' failure to receive a promotion and his dismissal were based on impermissible discriminatory motives. While not stating with any specificity the discriminatory conduct involved in the promotion denial, plaintiffs allege that the subsequent reprisals by supervisory personnel, along with the negligence involved in handling and disclosing the blood test results, all resulted in his impermissible dismissal. Yet the factual allegations relating to the incidents with his supervisor and the filing of a grievance with the union seem to raise a more straightforward reprisal employment discrimination claim. However, rather than alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17, plaintiffs have invoked this court's jurisdiction under the FTCA claiming that defendant's tortious conduct led to Sierra Pérez' dismissal. In any case, after having examined the record in general, and more specifically the CBA entered into by the union and the VA (including the VCA), the decision as to whether or not plaintiffs have an actionable discrimination claim under the FTCA will have to await another day as the plaintiffs have failed to exhaust the grievance and arbitration procedures of the CBA, and consequently, their discrimination claim must be dismissed.

The CBA defines a grievance as "any complaint: (A) By an employee or the union concerning any matter relating to employment." (Docket Document No. 15, *Exhibit D*, Article 13, § 2(A)). Section 3 provides that, pursuant to 5 U.S.C. § 7121, for both adverse actions as defined under 5 U.S.C.

§ 7512 and discrimination claims under 5 U.S.C. § 2302(b)(1), the employee has the choice of filing an action "under the statutory appeal process or the negotiated grievance process, *but not both.*"[3] (Emphasis added). Section 7 provides that any grievance should first be presented to the immediate supervisor and if no accord is reached, to the director of the agency. Where these attempts bear no fruit, the grievance is then referred to arbitration.

Here we have uncontroverted evidence that Sierra Pérez began the grievance process by filing a complaint with the union representative. Therefore, according to the terms of the CBA and the relevant statutory provisions, he was foreclosed from filing under the statutory appeal procedure. He also admits that he abandoned the grievance procedure after he was informed in October that he tested positive for AIDS. It is clear therefore that, to the extent that plaintiffs are alleging an employment discrimination claim, failure to exhaust the grievance and arbitration procedures under the CBA is a bar to plaintiffs maintaining an action based on alleged discriminatory conduct. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Williams v. Sea–Land Corp.*, 844 F.2d 17, 18 (1st Cir.1988).[4]

### B. Medical Malpractice Claim

Section 1346(b) of Title 28 gives federal district courts jurisdiction over claims for money damages,

> [f]or injury or the loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where

the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). *See also* 28 U.S.C. § 2674. The "law of the place" language has been interpreted as requiring the court to look to the tort law of the state where the federal employee acted. *United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1852–53, 10 L.Ed.2d 805 (1963); *United States v. Noone*, 938 F.2d 334, 336 (1st Cir.1991). *See generally Brown v. United States*, 653 F.2d 196, 201 (5th Cir.1981), *cert. denied* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982).

Article 1802 of the Civil Code of Puerto Rico provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage done." 31 L.P.R.A. § 5141. In the medical malpractice context, an action for damages lies when, by a preponderance of the evidence, it is proved that the doctor's negligent conduct was the factor that most probably caused the plaintiff's damage. *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721, 732 (1984). The elements of the tort are: (1) the basic norms ("normas minimas") of knowledge and medical care applicable to general practitioners or specialists; (2) proof that the medical personnel failed to follow these basic norms in the treatment of the patient; and (3) a causal relation between the act or omission of the physician and the injury suffered by the patient. *Medina Santiago v. Dr. Alvan Vélez*, 88 J.T.S. 8 at 5455 (1988); *see Pagán Rivera v. Municipio de Vega Alta*, 90 J.T.S. 123 at 8210 (1990). Also Puerto Rico law recognizes that no malpractice claim exists

---

**3.** We note here that while excepted employees are included in covered positions for discrimination claims under 5 U.S.C. § 2302, *see* 23 U.S.C. § 2302(a)(2)(B), they are not included in the categories of employees who can maintain claims under 5 U.S.C. § 7512. *See* 5 U.S.C. § 7511. Therefore, while plaintiff Sierra Pérez would have the choice to file his discrimination claim under either procedure, he would be limited to the CBA's grievance procedure for an adverse action claim.

**4.** We simply note here that, if indeed plaintiffs are alleging a Title VII cause of action based on reprisal discrimination, there is no allegation that plaintiffs complied with the requisite filing of the complaint with the Equal Employment Opportunity Commission. Therefore, even if the plaintiffs' abandonment of the grievance procedure would allow them to commence the statutory appeal process, a position upon which we render no opinion, no Title VII action would lie.

where a physician's diagnosis, although erroneous, falls within the range of generally accepted medical practice. *Pérez Torres v. Dr. Wallace Balduell Ramos*, 88 J.T.S. 4 at 5427 (1988); *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 820–21 (1987).

Plaintiffs' medical malpractice claim is based on two theories. First, plaintiffs allege that the hospital and the doctor were negligent in handling the blood test results. Their claim is that Sierra Pérez' results were mixed up with a co-worker who also tested positive for AIDS. Plaintiffs' second theory is that his test results were revealed to fellow workers and supervisory personnel by Dr. Sonni thereby breaching the confidentiality of the doctor-patient relationship. Again, the uncontroverted evidence presented by the government mandates the entry of summary judgment in its favor.

 As to the blood mix-up theory, which led to the alleged "misdiagnosis", defendant has come forward with evidence showing that Sierra Pérez did, in fact, test reactive to the virus which causes AIDS. Defendant produced the lab results which give Sierra Pérez' name and social security number. In his *Report on Disability Retirement* he was also diagnosed as having pneumocystic carinni pneumonia, a condition often diagnosed in persons suffering from AIDS. In their complaint, plaintiff himself admitted to suffering from a case of bronchitis or a mild form of pneumonia at the time the initial test results were delivered to him in October 1987. Therefore, based both on clinical findings and lab results, Dr. Sonni initially diagnosed plaintiff as suffering from AIDS. It is clear that the medical findings were within the range of possible diagnoses. Therefore, the fact that it was subsequently determined that plaintiff did not suffer from AIDS, in itself, is not a sufficient basis to find that the element of negligence on the part of the physician.

In sum, we find first that no mix-up of blood test results occurred, and secondly, that Dr. Sonni's diagnosis was within the range of acceptable medical process. Consequently, the element of negligence on the part of medical personnel has not been proved by a preponderance of the evidence.

 As to the duty of the doctor to not reveal medical information relating to Sierra Pérez' condition, we have the following evidence before the court. We have the voluntary consent form signed by Sierra Pérez which explained that the results of the test would remain confidential and not be revealed without his authorization. Also before the court is Dr. Sonni's affidavit in which he stated that he personally told plaintiff of the positive test results; that he did not divulge the condition to fellow workers; and that the only other persons that came into contact with the information was the nurse who worked in his office and the technician who prepares the results. Also, the October 14, 1987 memo sent by Dr. Sonni to the personnel chief related that, because of a blood condition, he was unfit for work and should not work either in food preparation, or direct patient care. No mention is made of AIDS. In fact, the record reveals that plaintiff was suffering from a type of pneumonia during the relevant period, and this condition alone might warrant removal from these work activities. On such a record, it is impossible to conclude by a preponderance of the evidence that either Dr. Sonni or the hospital divulged confidential information relating to Sierra Pérez' condition. The fact that co-workers may have shown concern about his condition, especially after having been out sick a number of days, is ambiguous at best and simply does not rise to the level of evidence necessary to create a genuine issue of material fact for trial.

Also, in January 1988 several attempts were made to reach Sierra Pérez in order to inform him of the results of the second AIDS test. Plaintiff admits to receiving the correspondence, albeit after the date of the scheduled appointment. Yet, plaintiff contacted neither Dr. Sonni nor the personnel officers at the VA. It was only in March, well after the plaintiff failed to contact VA personnel, that he was released from employment on the ground of abandonment. Under such circumstances, this court finds no negligence on the part of

medical authorities where it is the patient who fails to cooperate both in the treatment process and with respect to his employment status.

Because we rule that an action for medical malpractice would not lie against the VA hospital and Dr. Sonni under Puerto Rico law, we find that there has been no violation under the FTCA. Therefore, defendant is entitled to judgment as a matter of law.

## IV.

### *Postscript*

After the preparation of the above Opinion and Order but before it was issued, plaintiffs filed an opposition to defendant's motion for summary judgment. This opposition was filed on September 10, 1991, a scant six days before trial was set to commence.[5] A brief chronological review of the filings relating to the summary judgment motion is necessary to understand the rationale for our treatment of plaintiffs' opposition.

Defendant's motion for summary judgment was filed on June 13, 1991. Plaintiffs claim that this motion was received on June 24, 1991. On the same day, they filed a motion for a thirty-day extension to file an opposition citing the need for time to respond to the government's extensive arguments and the scheduled absence from Puerto Rico of plaintiffs' counsel. The court granted the extension on July 10, 1991 and the Clerk's office notified the parties on July 16, 1991. Plaintiffs claim to have received this order on July 19, 1991. Even accepting July 19, 1991 as the date when the thirty-day extension began to run, plaintiffs waited *fifty-three* days before filing their opposition. Under the Local Rules of the Court, upon expiration of the time for the opposing party to submit their response, the motion shall be considered and decided. Rule 311.9.

This is exactly what the court did. The above Opinion and Order reflects the fact that defendant's motion *was* unopposed at the time the court considered and decided

the motion. Plaintiffs asked for no further extension. They simply let the clock tick until reaching the eve of trial. Under such circumstances, in light of plaintiffs' disregard for the rules of this court, we are under no obligation to review or use plaintiffs' submission in deciding the motion. However, recognizing the seriousness of plaintiffs' claims, we decided, *in this case*, to review the opposition. This in no way excuses plaintiffs' tardiness nor should our decision here serve as the switch opening the floodgates of late documents submitted in contravention of the local rules.

Turning to the substance of the opposition, plaintiffs admit that they seek to raise no employment discrimination or harassment claims against defendant. They refer to allegations 11–16 in the complaint as "part of the general factual descriptive background" of the case. (*Opposition* at 3). Rather, they seek to establish an "erroneous termination of employment" action. They refer to Title VII in this context. Therefore, as mentioned in a footnote above, their failure to file a charge with the EEOC precludes plaintiffs from bringing an action under Title VII for Sierra Pérez' termination.

As to the malpractice claim, plaintiffs attempt to raise issues of fact for trial. They argue that Sierra Pérez' termination and the retirement of the co-worker suffering from AIDS were contemporaneous. They also raise a credibility issue with respect to Dr. Sonni's deposition in relation to this issue arguing that a mix-up of results cannot be ruled out. They also question whether Dr. Sonni failed to exercise the standard of care required by physicians in Puerto Rico in that he failed to inform plaintiff that the first AIDS test could be inconclusive and there was a 4% margin of error. To establish this fact, they submit a portion of Dr. Sonni's deposition. (*Exhibit 7B*).

We think, however, that plaintiffs' arguments do not require revision of our decision. As to the mix-up of blood results, plaintiffs themselves appear to admit that the initial test belonged to Sierra Pérez. Also, as to plaintiffs' argument that Dr.

---

**5.** In a separate order dated September 10, 1991, the court set aside the trial date.

Sonni failed to inform plaintiff about the 4% margin of error of such tests, defendant's evidence remains uncontroverted that plaintiff was referred to CLETS for further tests and that, upon discovering a negative test result, Dr. Sonni unsuccessfully attempted to contact plaintiff. The documentary evidence confirms Dr. Sonni's deposition testimony as to what transpired. Rather than being a credibility issue, the evidence as a whole must be evaluated to determine whether Dr. Sonni's treatment of plaintiff so varied from the general standards of medical practice so as to constitute negligence. We continue to think that it does not. Therefore, our ruling as to the malpractice claim also stands.

Finally, for the first time plaintiffs clearly allege a claim for the violation of their privacy rights, notwithstanding their view that allegations 19 and 20 of the complaint claim. However, as to this claim, they have produced *no admissible evidence* to rebut Dr. Sonni's deposition testimony and the October 14, 1987 memo. Nor have they alleged any factual allegations other than Sierra Pérez' "sense" that others knew that he had AIDS. Plaintiffs also submitted part of Sierra Pérez' deposition where Dr. Sonni's nurse offered him "words of comfort." However, Dr. Sonni admits that the nurse knew the diagnosis. There is no evidence, however, that either the doctor or the nurse breached their duty of confidentiality.

Having reviewed plaintiffs' opposition, we find no basis for revising our Opinion and Order. Therefore, our earlier judgment granting defendant's summary judgment motion and dismissing plaintiffs' complaint stands.

### V.

#### Conclusion

Based on the reasoning stated above, we GRANT defendant's motion for summary judgment. Accordingly, plaintiffs' complaint is DISMISSED.

IT IS SO ORDERED.